UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JARONNA SINGLETON | : | |
| Plaintiff, | : | |
| | : | |
| | : | 2:24-cv-7044-RMG-MGB |
| | : | |
| | : | **COMPLAINT** |
| CONCORD HOSPITALITY ENTERPRISE | : | (Jury Trial Requested) |
| COMPANY, LLC, | : | |
| Defendant. | : | |
| | : | |
| | : | |

COMES NOW the Plaintiff, JaRonna Singleton (hereinafter "Plaintiff"), by and through her undersigned attorney, and hereby files this Complaint for damages and other legal and equitable relief from Concord Hospitality Enterprise, LLC (hereinafter "Defendant") for unlawful employment practices in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq*. (hereinafter "ADA") and state law.

**NATURE OF THE CASE**

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of discrimination.

2. Plaintiff, who was employed at Defendant's facility, located at 250 Johnnie Dodds Blvd Mt. Pleasant, South Carolina 29464, has a disability in that she suffers from asthma and a severe allergy to mold. Due to the presence of mold at the facility and her subsequent allergic reactions, Plaintiff, on multiple occasions requested reasonable accommodations.

3. Despite the Plaintiff's documented medical need for accommodation due to her disability, Defendant failed to provide the necessary support, thereby exacerbating her condition.

  As a result of this denial, Plaintiff experienced undue stress, anxiety, and feelings of physical harm in the workplace, as she struggled to cope with the unmet needs arising from her disability. Defendant's actions created an environment of discrimination and marginalization, contributing significantly to the deterioration of the Plaintiff's mental health.

4. Plaintiff was ultimately terminated within weeks of making requests for accommodations and filing an OSHA complaint regarding hazardous and unhealthy working conditions.

5. As a result of Defendant's conduct as alleged more particularly herein, Plaintiff is seeking damages and other legal and equitable relief from Defendant for violations of the ADA and state law.

## JURISDICTION & VENUE

6. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 12117(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims, which arise from a common nucleus of operative facts such that they form the same case or controversy, pursuant to 28 U.S.C. § 1367.

8. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c), and (d), in that the unlawful employment practices complained of occurred within this judicial district and Defendant maintains offices and conducts business in this district.

## PARTIES

10. The Plaintiff is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, a resident of South Carolina.

11. Plaintiff is an African American female.

12. Plaintiff has a disability in that she possesses asthma and a severe allergy to mold. This condition affects Plaintiff physically, and thus, significantly impacts her daily life and ability to engage in various activities when mold is present.

13. At all relevant times and until her termination on or around September 20, 2023, Plaintiff was employed by Defendant as a Food and Beverage Manager at Defendant's facility, Hotel Indigo, located at 250 Johnnie Dodds Blvd, Mt. Pleasant, South Carolina 29464.

14. Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12111(7).

15. Defendant transacted and continues to transact business in South Carolina by, among other things, employing persons at Hotel Indigo, within South Carolina and within this judicial district.

16. At all relevant times, Defendant has continuously maintained at least fifteen (15) employees.

17. Defendant is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5), as Defendant has, at all relevant times, continuously engaged in an industry affecting commerce.

### EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

18. On or around December 21, 2023, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant engaged in disability discrimination, including failing to provide reasonable accommodation and retaliating against Plaintiff when she engaged in protected conduct.

19. On September 6, 2024, Plaintiff received her Notice of Right to Sue from the EEOC regarding EEOC Charge No. 430-2024-00806.

## STATEMENT OF FACTS

20. In or around November 2022, Plaintiff commenced employment as a Food and Beverage Manager at Defendant's Hotel Indigo located in Mount Pleasant, South Carolina (hereinafter "Defendant's Hotel").

21. Upon information and belief, at all relevant times, Defendant employed a Corporate Director of Associate Relations named Ann Walsh (hereinafter "Ms. Walsh"). Moreover, Ms. Walsh, in her capacity as Corporate Director of Associate Relations, possessed and exercised the necessary authority to act on behalf of the Defendant. This authority included, but was not limited to, making decisions, implementing policies, and undertaking actions that are central to the allegations contained herein. It is further alleged that such authority was vested in Ms. Walsh by virtue of her position as the Corporate Director of Associate Relations and was acknowledged and accepted by the Defendant. Therefore, any actions or decisions made by Ms. Walsh in this capacity are attributable to the Defendant.

22. Upon information and belief, at all relevant times, Defendant employed a Hotel General Manager named Joe Giannino (hereinafter "Mr. Giannino"). Moreover, Mr. Giannino, in his capacity as Hotel General Manager, possessed and exercised the necessary authority to act on behalf of the Defendant. This authority included, but was not limited to, making decisions, implementing policies, and undertaking actions that are central to the allegations contained herein. It is further alleged that such authority was vested in Mr. Giannino by virtue of his position as the Hotel General Manager and was acknowledged and accepted by the Defendant. Therefore, any actions or decisions made by Mr. Giannino in this capacity are attributable to the Defendant.

23. Plaintiff reported directly to Mr. Giannino.

24. Plaintiff initially sought employment with Defendant due to her lifelong goal of pursuing a career in hospitality and fulfilling her duties assisting others.

25. Plaintiff's essential duties include but are not limited to: (1) managing the hotel's restaurant; (2) supervising approximately 8-10 employees, such as servers, bartenders, and bussers; (3) overseeing scheduling; and (4) hiring and training new food and beverage employees.

26. At all times relevant, Plaintiff possessed the skills, experience, and education necessary for the position of Food and Beverage Manager.

27. At all relevant times and throughout her employment, Plaintiff satisfactorily performed her job.

28. Plaintiff suffers from asthma, which can result in difficulty breathing, chest pain or tightness, coughing, and wheezing.

29. In addition to her asthma, Plaintiff possesses a severe allergy to mold. When Plaintiff suffers from allergic reactions, she endures the following physical symptoms: (1) respiratory symptoms, including sneezing, nasal congestion, coughing, and wheezing; (2) eye symptoms, including redness, itching, and watering; (3) skin reactions, including rashes and/or hives; and (4) other general symptoms, including fatigue, sinus pressure, and sore throat. In addition to these physical symptoms, Plaintiff's allergic reactions can lead to further and more severe medical issues, including, but not limited to, allergic fungal sinusitis, hypersensitivity pneumonitis, and aspergillosis.

30. Due to the severe nature of Plaintiff's mold allergy in combination with her asthma, the presence of mold in her surrounding environment hinders Plaintiff's ability to perform

her job duties as a Food and Beverage Manager. However, Plaintiff's allergic reactions are substantially mitigated when there is no mold present in her immediate surrounding area. As such, Plaintiff is able to perform the essential functions of her job with a reasonable accommodation.

31. Upon information and belief, mold was present at Defendant's Hotel, including in areas that Plaintiff primarily worked, like the kitchen, dining, and bar areas. Upon information and belief, guests of Defendant's Hotel had complained about the presence of mold, high humidity, and issues with air quality inside the hotel.

32. While working at Defendant's Hotel, Plaintiff suffered from allergic reactions and had difficulty breathing.

33. In or around March 2023, Plaintiff informed Mr. Giannino of her difficulties breathing due to the mold that was present at Defendant's place of business.

34. Because of her continued allergic reactions and difficulties with breathing, Plaintiff set an appointment with her doctor to conduct an allergy test. This appointment was scheduled for the beginning of May 2023. In the meantime, throughout March and April 2023, Plaintiff continued to complain to Mr. Giannino about the air quality in Defendant's Hotel and her resulting allergic reactions.

35. Mr. Giannino responded by attempting to deflect responsibility and suggesting that Plaintiff's doctor might need to adjust her medication or that she might have a vitamin deficiency.

36. Upon information and belief, Mr. Giannino was aware that Defendant's Hotel had a mold issue. During weekly manager meetings, which Plaintiff and several other managers were

present for, Mr. Giannino stated that they had planned to remediate the mold issue during the hotel's off-season, specifically between November 2023 and February 2024.

37. In addition to guest complaints and Mr. Giannino's statements regarding remediation, Defendant's Director of Housekeeping complained to Plaintiff about the presence of mold in Defendant's Hotel.

38. In or around May 2023, Plaintiff went to her doctor and took an allergy test. Plaintiff was informed that she had an allergy to mold.

39. In or around May of 2023, Plaintiff shared the results of the allergy test with Mr. Giannino. Mr. Giannino personally confirmed to Plaintiff that mold had indeed been found on the premises. Mr. Giannino also informed Plaintiff that a scientist would be visiting the property to conduct air quality tests due to complaints from guests.

40. Plaintiff initially requested that Defendant mitigate and/or remove the mold from the premises immediately. Instead of taking steps to address mold issues at the time Plaintiff reported her allergy and made this request, Mr. Giannino informed Plaintiff that remediation would be conducted between November 2023 and February 2024.

41. In or around July 2023, Plaintiff had to go to urgent care because she was experiencing shortness of breath. Plaintiff ended up staying at the hospital for two nights. She was informed that her immune system was reacting due to allergens and/or substances in her environment.

42. In or around August 2023, Defendant provided Plaintiff with a copy of an internal mold evaluation that had, upon information and belief, been conducted in various areas of Defendant's hotel. The evaluation report included a blanket statement that "fungal growth [was] within normal levels at the time of inspection." However, the evaluation report

provided no measurements or other means to determine levels of fungal growth or the amount of mold present in Defendant's hotel.

43. Plaintiff and her Doctor requested that Plaintiff be allowed to work remotely while Defendant addressed the mold issues present at Defendant's Hotel.

44. Upon information and belief, Plaintiff could have worked remotely to fulfill several of her responsibilities as Food and Beverage Manager, including completing payroll, ordering and refreshing inventory, and scheduling.

45. Defendant refused to permit the Plaintiff to work remotely. Instead, Defendant proposed a new workstation as an accommodation. However, this solution failed to address the Plaintiff's mold allergy because the mold was pervasive throughout the Defendant's Hotel.

46. Plaintiff exercised normal breaks, similar to smoke breaks, as a way to step outside of Defendant's mold-contaminated hotel to breathe fresh air. Plaintiff was not allotted additional time to take breaks. Furthermore, these breaks were not sufficient to address and/or mitigate Plaintiff's allergy symptoms.

47. Plaintiff requested FMLA leave; however, this request was denied because Plaintiff was not eligible for FMLA leave at the time of her request.

48. Plaintiff requested that Defendant speak with her medical consultant, to remedy the issues and discuss potential solutions to Plaintiff's allergic response to Defendant's unsafe premises; however, Defendant failed to respond to Plaintiff's requests.

49. Plaintiff filed a complaint (Complaint No: 209582329) with OSHA on September 5, 2023, complaining about Defendant's unsafe work premises.

50. On or about September 13, 2023, Plaintiff presented Defendant with a Doctor's note indicating that she is not medically cleared to return to work until October 15, 2023, due to the mold-filled conditions of Defendant's Hotel.

51. Defendant, however, demanded that Plaintiff return to work despite her medical condition and expressed doctor's orders.

52. Plaintiff emailed Mr. Giannino several times seeking clarity on Defendant's conflicting return to work orders, however, these emails were ignored.

53. Plaintiff, based on medical professional advice and lack of clarity from Defendant, did not appear for work from September 16, 2023, through September 20, 2023. Plaintiff was ultimately terminated on September 20, 2023.

54. In September of 2023, and as a result of Defendant's conduct as alleged herein, Plaintiff was diagnosed with depression and anxiety.

55. Plaintiff filed an EEOC Charge of Discrimination on December 21, 2023, alleging disability discrimination based on failure to accommodate and retaliation.

56. Defendant submitted a position statement on June 18, 2024.

57. Plaintiff then filed a rebuttal on August 12, 2024.

58. The EEOC conducted their investigation and issued a right to sue dated September 6, 2024.

**FIRST CLAIM FOR RELIEF**
**Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Retaliation)**

59. Plaintiff incorporates by reference all foregoing paragraphs as though the same were set forth herein at length.

60. To state a prima facie claim of retaliation under the ADA, a plaintiff must establish that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) a causal link

exists between the protected activity and the adverse action. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012)

61. Plaintiff engaged in several protected activities, including, but not limited to, requesting reasonable accommodation on multiple occasions, making multiple good faith complaints to Mr. Giannino about (1) mold on the premises, and (2) the inadequacy of Defendant's provided accommodations, and filing an OSHA Complaint on September 5, 2024, in response to unsafe conditions relating to her disability within the workplace.

62. Plaintiff suffered an adverse action in that she was treated less favorably than her counterparts who did not engage in protected activity, and ultimately, was terminated on or around September 20, 2023.

63. As demonstrated by the timing of the adverse actions in relation to Plaintiff's protected conduct, Defendant's continued refusal to appropriately accommodate Plaintiff, and Defendant's failure to engage in the interactive process as alleged hereinbelow, the adverse actions taken against Plaintiff were motivated by Plaintiff's participation in the protected conduct alleged hereinabove.

64. Defendant's actions as described herein were willful and wanton and done with reckless disregard for Plaintiff's protected rights.

65. Upon information and belief, as set forth above, Defendant targeted Plaintiff for retaliatory discipline, in the form of a termination, because she complained about hazardous work conditions and challenged accommodations that were insufficient to address Plaintiff's disability.

66. Defendant's actions were sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination.

67. Defendant's conduct, as described above, was without justification or excuse, is reprehensible, and occurred despite Plaintiff's complaints to prevent, halt, and reverse the discrimination and retaliation.

68. As a direct and proximate result of the above-described discrimination, Plaintiff sustained damages including back pay, compensatory damages including emotional distress, and has incurred attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
### Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.
### (Failure to Accommodate)

69. Plaintiff incorporates by reference all foregoing paragraphs as though the same were set forth herein at length.

70. A plaintiff bringing a claim for failure to accommodate under the ADA must also allege that: (1) she had a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) she could perform the essential functions of her job with reasonable accommodation; and (4) the employer refused to make such reasonable accommodations. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

71. At all relevant times, Plaintiff has suffered from asthma and a severe allergy to mold.

72. Plaintiff's diagnosed condition affects her physically and mentally, substantially limiting her ability to perform major life activities, including, but not limited to, breathing, concentrating, thinking, communicating, and working, among other things, and therefore constitute a disability under the ADA, 42 U.S.C. 12101, *et seq.*

73. Plaintiff is a qualified individual as she, with or without reasonable accommodation, could perform the essential functions of the Food and Beverage Manager position she held until her termination.

74. Defendant knew of Plaintiff's disability, as Plaintiff informed Defendant and requested a reasonable accommodation.

75. Plaintiff requested reasonable accommodation on multiple occasions, including, but not limited to, her initial request for Defendant to mitigate and/or remove the mold in July 2023, her subsequent requests for leave when Defendant's stated actions were insufficient to address her disability, and her request to work remotely.

76. Several reasonable accommodations existed that would have allowed Plaintiff to perform the essential functions of her job. Particularly, Defendant could have conducted mold remediation at the time Plaintiff requested in July 2023, instead of waiting for a time between November 2023 and February 2024. Further, Plaintiff performed several of her duties in an office, as such Plaintiff could have performed several duties remotely, decreasing the amount of time that Plaintiff was exposed to mold.

77. An action taken by Defendant to accommodate Plaintiff, such as moving Plaintiff's office or allowing her to take regular "smoke breaks," were insufficient to mitigate symptoms caused by Plaintiff's disability.

78. In addition, Defendant failed to engage in a good faith interactive process. Instead, Defendant (1) provided so-called accommodations that did not meet Plaintiff's needs or (2) blanketly denied Plaintiff's requests without discussing whether there was a means to adjust the accommodation such that it worked for both parties.

79. Defendant discriminated against Plaintiff on the basis of her disability when Defendant failed to provide reasonable accommodation and ultimately terminated Plaintiff.

80. As a direct and proximate result of the above-described discrimination, Plaintiff sustained humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

### THIRD CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

81. Plaintiff incorporates by reference all foregoing paragraphs as though the same were set forth herein at length.

82. To state a claim for intentional infliction of emotional distress, plaintiff must allege facts sufficient to show that: "(1) defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the Plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it." *Holtzsceiter v. Thomson Newspapers*, 306 S.C. 297, 302 (1991).

83. Defendant had knowledge that (1) mold was present on the premises, (2) the presence of mold is harmful to individuals with and without asthma and allergies, and (3) mold was particularly harmful to Plaintiff, as demonstrated by her diagnosis and hospital stay.

84. Defendant's acts of discrimination as alleged hereinabove, particularly including but not limited to, failing to accommodate Plaintiff, which resulted in the cause and/or exacerbation of Plaintiff's asthma and allergy symptoms, were extreme and outrageous.

85. Defendant's acts of terminating Plaintiff while on medical leave for a medical condition caused and/or exacerbated by Defendant were extreme and outrageous.

86. Given Defendant's knowledge, Defendant performed these acts with the intent to cause or with reckless indifference to the likelihood that it would cause Plaintiff's severe emotional distress.

87. Plaintiff's fear for her physical health and job safety has created a hostile work environment whereby Plaintiff continued employment under continuous fear of termination and fear of illness due to the denial of her reasonable accommodation.

88. As demonstrated by her diagnosis of depression and anxiety in September 2023, Plaintiff suffered severe emotional distress and mental anguish as result of Defendant's conduct.

89. The emotional distress endured by Plaintiff was so severe that a reasonable man could not be expected to endure it.

90. At all relevant times, Mr. Giannino was acting within the scope of his employment. Thus, Defendant is vicariously liable under the doctrine of *respondeat superior*.

91. As a direct and proximate result of the conduct described herein, Plaintiff has suffered and is entitled to recovery of damages to be determined at a trial of this matter.

## DAMAGES

92. As a result of the aforementioned conduct, Plaintiff has sustained permanent injury to her reputation; economic injuries; emotional and mental injuries; violation of her integrity; loss of valuable time; embarrassment, humiliation, compensatory damages; punitive damages; and all other injuries set forth above.

WHEREFORE, Plaintiff, JaRonna Singleton, respectfully requests prays:

1. That the Court empanel a jury to hear her cause;

2. A judgment declaring that the practices complained of herein are unlawful and in violation of the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*;

3. Actual and compensatory damages pursuant to 42 U.S.C. § 12117, including but not limited to, lost wages, lost job benefits, physical and mental suffering, in an amount undetermined, but believed to be in excess of $75,000.00;

4. Costs, disbursements, and attorneys' fees pursuant to 42 U.S.C. § 12117;

5. All damages which Plaintiff has sustained because of Defendant's conduct, including back pay, benefits, general and specific damages for lost compensation, and job benefits she would have received but for Defendant's retaliatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

6. Exemplary and punitive damages in an amount commensurate with Defendant's ability and to deter future malicious, reckless, and / or intentional conduct;

7. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

8. Pre-judgment and post-judgment interest, as provided by law;

9. That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

10. Granting Plaintiff other and further relief as this Court finds necessary and proper.

11. Plaintiff also seeks injunctive relief, including, but not limited to:

    a. Training regarding the prohibition against retaliation for engaging in protected activity for all of Defendant's supervisors;

    b. Training regarding the prohibition against discrimination for engaging in protected activity for all of Defendant's supervisors;

    c. Training of all employees regarding retaliation, including the reporting procedures for reporting such retaliation, conducted by reputable outside vendors;

    d. Supervisory discipline up to and including termination for any employee who engages in discrimination based upon disability, including any employee who engages in retaliatory practices; and

    e. Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief.

12. Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

This the 5th day of December, 2024.

/s/M. Anthony Burts II
M. Anthony Burts II
Attorney for Plaintiffs
S.C. State Bar No.: 103328
P.O. Box 102
Newton, NC 28658
Telephone (704) 751-0455